I happen to know you because you're a fellow Phoenician, but we're making an audio recording of our I understand, Judge. There are two issues that squirrelly before the judge with respect to this case. There's a district court trial case that I tried in district court, and the two issues are whether the district court abuses discretion in allowing police witnesses to testify as lay witnesses versus having them to disclose as expert witnesses. And then the second issue is whether the trial court erred by limiting defense counsel from presenting additional 404B evidence with respect to the victim in this case. Judge, I'll start – judges, I will start with the issue with regards to the standard of review. I think the government has taken the position initially that – or has taken the position that I did not preserve the issue with regards to a motion in limine with respect to the police officers and how they're testifying. I will point out to the court that trial counsel, I filed motions in limine with respect to this issue, mainly because of this issue, because we did not know what or how the police officer was ultimately going to testify to. Although we would concede that they could testify to what they saw when they arrived on the scene. Additionally, Judge, I would also point out with respect to Detective or Officer Lane that when he testified and before he gave the opinion that – or I guess testimony about policies and procedures relating to whether or not an officer should or can strike an individual if they're mad, upset, or whatever, I objected to that outside – as being outside the scope. So I do believe that I did preserve the issue with regards to this particular issue and that I think the standard of review should be abuse of discretion and not plain error. And I also note, Judge, that at some point in time, as I – as we pointed in our brief, that to try to continually object to something that has been definitively defined by the district court only – sure could only provoke the judge or interrupt the jurors as they begin to – or as they are looking at this case. So, again, Your Honors, I do believe that it had been preserved. With respect to this case, I know that the judges have the disc of the video recording. It's similar to, I think, what we all know about the Rodney King incident. It was caught on videotape. What is the most important thing, if you have an opportunity or if you've had a chance to look at it, when you go back and look at it, that there are only two officers that are involved in the original scene. And I'm going to define it as there is the kicking, the stomping, and then the alleged punch. Okay? When you are in or looking at that video, there is only Officer Bodoni and Officer Thinn. Officer Bodoni is the husband or the – they were separated at the time – but was the husband of my client at that time. Why is this important? Because I think it goes then now to the testimony that was allowed to come in. And if I may, let me backtrack a little bit. One of the reasons why I pressed or wanted so hard to have these disclosures, because of this exact issue. It starts to come – or the line between what is a lay opinion and what is an expert opinion starts to be blurred when you don't have any disclosure as to what's going on. And in the record, you can see that there's a discussion, many discussions, with respect to this issue. And trying to determine whether or not the witnesses, the police officers – and I'm talking about Clark, Dobson, and Lane – are actually giving expert opinions or giving opinions based on their observation. Well, we know from the video that they could not give any opinions with respect to the kicks because they were not there. That is undisputed. I believe the government, when they get up here, will agree. We cannot give those opinions because they didn't see it. And when I'm talking about this issue, I'm referring to what I think everybody is – as the DeSemino case and this is the Coon case with regards to officers being able to testify. If they can see it, they can testify to it. Okay. So with regards to the kicks, none of the officers should be allowed to testify as to the reasonableness done because they weren't there. With respect to the hitting, it's in question as to Officer Clark whether he actually saw it. Because the way he testified was that he did see the kicks and the hit, but then ultimately he conceded and said he didn't necessarily see the hit. And yet the question becomes whether or not they get to give opinion testimony as experts without having to have been disclosed to that issue. And, judges, I will concede that none of them ultimately give the, I guess, right-on-point reasonableness as to the conduct. I will concede to the Court that they don't actually ask that question and give that question. However, they do get to the point where I believe that it was blurred, where there is such a blurring line between the lay opinion that in the transcripts you can see I start to go off or try to discuss and deal with that issue because it is not one that you just can't, as a trial attorney, just lay out there and just assume that the jury is getting it. And that's the problem, that ultimately not being able to have a disclosure as to what they're testifying to, everybody's trying to figure out what they're testifying to and as to where these issues cross. With respect to the final issue, the 404B evidence, there was an incident in 2008 with the appellant and the victim's brother. There were prior statements about the victim having resentment towards the police and that the refused, and then ultimately the district court in this case refused to, even though it came in, in certain parts of the trial, didn't allow us to use it in closing, did not allow us to present the testimony from the 2008 incident. I know the courts understand, the judges understand the 404B evidence, the mimic, what would it be used for? Well, this particular incident, unlike Coombe, if I may use that, the Rodney King incident, you had an individual who had a known history of on the Navajo reservation as being a terror. And I don't use that word lightly as I stand before the court. As the court knows from the transcription, he had taken an ax to his grandmother's house, had attempted to burn down the city that day, had escaped from the hospital, had, fuck the police, excuse my language, tattooed across his, this was a known commodity to have been in trouble and a problem on the reservation. Well, what, most of that came in, didn't it? That did. The issue is, Judge, with respect to the other parts, those should have came in also. What didn't come in that you think prejudiced your client? The incident with regards to 2008 where the defendant, I'm sorry, where the victim threatened to kill my client's brother in an altercation where there was a scramble. We were not allowed to present that evidence. And with respect to his prior statements, or at least being, I do remember at least being able to argue before the jury that this gentleman was a known commodity. The reason why this was important was because it goes to my client's state of mind as to what she knew about him at the time this incident happens. And, Your Honors, as you take a look at, and I'm going to reserve a minute for any rebuttal, but when you take a look at the video, in and of itself, when you do look at it, I will even concede, it is difficult, it is hard as you look at it in the context of watching the video, of just strictly watching the video, to just take it and to present that as the defense, or as in terms of the government presenting that as is case in chief. We were entitled to give and wanted to give the full context as to what this gentleman, who he was, and what he did on the reservation. You're down to a minute. Thank you. Thank you. Thank you, Mr. Mitchell. Good morning. April Anderson for the United States, Your Honors. The testimony presented here was lay opinion testimony about, from eyewitnesses. It was entirely appropriate. The issue before the jurors was to consider Ms. Thin's attack on the victim here, whether it was appropriate for her to kick and stomp a person who was lying on the ground, handcuffs behind his back, and had recently been pepper sprayed. Unfortunately, we had some eyewitnesses to this event, fellow officers of Thin's, who were able to testify about the victim's behavior, about Ms. Thin's behavior, and their testimony was entirely appropriate. Lay people who observe a crime can give opinions that are rationally based on what they saw. And none of the testimony here was so specialized, so particularized, so scientific, that it would fall within the requirements of 702 to be expert testimony. And counsel, are you arguing that the admission of that evidence is proper as lay opinion, even if the evidence issue was preserved? Assuming it's not plein air review, that we want to construe the motion in limine as preserving this? Certainly, Your Honor. It was admissible under either standard. But let me address the motion in limine. The district court specifically said that it couldn't decide this issue out of context. And I think defendant has explained that no one knew exactly what the officers would say until the testimony was complete, so it was entirely appropriate for the court to say, I can't decide that out of context. And that certainly notified defendants that they needed to make these objections. The only objection that they made was one objection, and they said that it was Mr. Lane's testimony was outside the scope. We would argue that that doesn't notify the judge that the defendant is concerned about the expert witness issue. But even if it does, and we were forced to decide that one question under the abuse of discretion standard, this wasn't an abuse of discretion. And a good example to look at is the Fourth Circuit case in Parkins. It's really very close on the facts here. It involved a use of force case. It involved officers who saw the attack, and they testified about whether there was any law enforcement justification. And those issues were preserved, and the court nevertheless found that the testimony was appropriate. Another case in this Court that would support our position is the case in Kuhn. That included testimony that the officers didn't see or understand the other officers' behavior. There again, we have testimony that goes to the justification. We also had testimony from that officer in Kuhn that the victim was neither aggressive nor combative. That's the sort of testimony that we have here in this case. You have more than that in this case. Is it really the government's position that, across the board, that the question about reasonable use of force from a police officer doesn't require expert testimony? How is a jury supposed to know what is the appropriate calibration, calibrated response, depending on how an arrestee is or is not resisting? The Court instructed the jurors at this point on the use of force, and it said it was more force than is necessary, and it explained that the jurors need to take in all the circumstances, including what defendant knew, how the victim was behaving, anything that the defendant might have known about the victim. And there were six days of trials here. There was a lot of testimony about what Ms. Thin knew about the victim in this case. Things were properly excluded that didn't go to her knowledge about the victim here because the victim's character and the victim's intentions were not relevant. I don't want to be misunderstood, but I'm not sure we're having clear communication. In this case, I have watched the video and I understand what was presented to the jury and what the – and that may very well change the outcome, I think, an evidentiary outcome about whether or not the jury needs expert testimony to decide whether a certain reaction by law enforcement is appropriate. But my question is whether it's really the government's position that across the board this is not expert testimony. And when I say this, I'm asking specifically about a question regarding reasonable – reasonable force. Well, I don't think that you could make an across-the-board rule. And if you look at this Court's decision in Figueroa-Lopez, you can see that principle in action. There, there was – you have to look at the quantity of opinion that exists in this testimony. And in Figueroa-Lopez, there were six or seven specific factors about the, you know, detailed nature of narcotics trafficking that the officers testified, how codes operated, the purity of drugs and what that meant, how you would hide drugs in a car, how you might use a rental car, principles of counter-surveillance driving. It just added up to so much detail that this Court decided that's expert testimony. But it's important to – Let me follow up. Excuse me. Go ahead and finish your answer. Well, I just wanted to point out that in Figueroa-Lopez, this Court did approve the officers' testimony that the defendants were behaving suspiciously. Even though, obviously, police officers are especially adept at making that judgment, it doesn't mean that since it's beyond someone's common knowledge that the officers can't testify about that. I think that's closer to what we have here. Let me – let me sort of explore what Judge Grist was asking. Suppose this were not a police case, okay? Ten people are – this is not an arrest. It's a normal assault prosecution. The defendant is charged with assault, and the defense is self-defense. Okay? You got my hypothetical in mind? Mm-hmm. Would witnesses be able to testify, I didn't see – I didn't see the victim doing anything that would justify beating him up, something to that effect? Forget the police element of it. Certainly, they would be able to do that. Our witnesses are the best people to make those kinds of judgments. You wouldn't need expert testimony about what's required for self-defense or anything of that sort? No. I mean, with an ordinary witness who had no police training, you wouldn't be able to lay a foundation to ask that question. And another thing I'd like to bring up, something that's important, a reason that we were able to ask these, and we should have asked these officers about their training, was that they worked as Navajo police officers in the same department, and they had the same training that the defendant did. And we had to prove that she willfully violated civil rights here. So her training is relevant. That means we should be able to ask other officers about their training so we can get an idea of what she probably would have known, what sort of training she probably would have been through, and what the policies of the police department were as perceived by other officers. That's entirely reasonable. It's very helpful for the jury. And it wasn't a big part of the testimony here. The officers mostly testified just about what they saw, what they heard, what they saw a defendant doing, what they saw the victim doing. And, of course, the primary evidence in this trial was an actual video. The crime was basically captured on video. It was shown several times to the jury. They took it back in the jury room with them. And it's hard to believe that if there were any error in any of these evidentiary errors that a defendant relates, that they would overshower that very powerful and graphic evidence of exactly what happened. Counsel, could you please address the 404, the 404B issue? Yes, Your Honor. A lot of evidence came in about the victim here. The jury heard that he had beat on his grandmother's door with an axe, that he might have set her house on fire. It's hard to really see what was left out. But I think what defendant claims is left out here is, number one, the arguments about Mr. — about the victim's character and intentions. And those are simply not relevant. What's relevant here is what Ms. Thin knew about the defendant, about the victim, and that might have given her some reason to fear him or interpret his behavior. It's not relevant to get in bad behavior, threats, other things that the defendant didn't even know about. The Court was fairly generous here in allowing defendant's brother to testify about an encounter he had with the victim, even though he couldn't remember if he told all these details to the defendant. The Court also excluded some arguments that the defendants made when they tried to use some of the evidence that had come in to show what Ms. Thin knew about the victim as character evidence to show that basically this was a guy who, you know, hated police and to go into his intentions. The 404B evidence was only admitted to show what Ms. Thin knew, and it was appropriate to disallow certain character arguments made with that evidence. And there was one other justification. I'm sorry, Your Honor? There was one other justification. I just said thank you. Well, I'll just mention one more thing, then. There was one other justification that the judge gave for excluding a witness to the prior arrest that Fabian Thin executed on the victim, and that was simply that he didn't want to take up the time on the collateral issue. That was entirely appropriate here, especially considering that that evidence would have gone to the victim's intent rather than what Ms. Thin knew about the victim. Was that the prior, the 2008 incident? The November incident, yes, the previous arrest with Ms. Thin's brother. Well, I thought that the jury heard about the prior altercation with Fabian Thin. Oh, they did. The jury heard evidence from Fabian Thin that went into detail about this. They even heard that, you know, Mr. Thin thought he had dropped his gun and that the defendant, the victim might have picked it up. Right. So what was left out? I'm sorry? What was excluded? At some point, the defendants asked to bring in what would be a third witness about this event, Ms. Cote, another officer who was involved, and the judge simply decided that that would be a collateral issue on issues of or a collateral trial on issues of intent. Okay. Thank you for the clarification. I just was a little confused because my notes show that they heard about the altercation with Fabian Thin, and it sounds like I got that part right. I think the jury had a very clear picture of all these events. There were a few questions, one witness things, and some arguments that were excluded, but it's hard to believe that it really affected the jurors' overall effect. Thank you, Ms. Amson. Thank you. Mr. Vigil, you had less than a minute left. Thank you, Your Honors. Thank you, Ms. Anderson. Judge, the only issue I wanted to follow back up on is with regards to the police officers and the expert opinions. I think with regards to the course example, if this were non-laid witnesses who witnessed this, could they come in and then testify with regards to the violent act? Absolutely. But when you add the additional part, because you now are that the defendant in this case is a police officer, and you start asking about policies and procedures, yes, Your Honor, it goes back to I believe that they have to have and should have been required to disclose those opinions based on their training and expertise and not have to deal with it on the fly at trial in trying to determine whether or not these are laid witnesses or expert witnesses. So that's in response to the Court's question as to whether or not they should have and should have been required to disclose those opinions. Thank you, Your Honor. Thank you, Mr. Vigil. Ms. Anderson, thank you. The case just argued is submitted. Good morning. Good morning. I'm Maria. Good. 11-16339 Mitchell v. West Bank is submitted on the briefs. We're done with that case. 11-16301 Delgado v. Astrup.             Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Silverman, Gould, Christen